IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MARYLAND
(Civil Division)

ANDREW STEWART,
3888 159th Street
Surrey, British Columbia, Canada
V3S0Y3,
        Plaintiff,

v.

BERT BELL/PETE ROZELLE NFL
PLAYER RETIREMENT PLAN,
200 St. Paul Place
Suite 2420
Baltimore, MD 21202-2040,

and

THE NFL PLAYER SUPPLEMENTAL
DISABILITY PLAN,
200 St. Paul Place
Suite 2420
Baltimore, MD 21202-2040,

and

RETIREMENT BOARD OF THE
BERT BELL/PETE ROZELLE NFL
PLAYER RETIREMENT PLAN,
200 St. Paul Place
Suite 2420
Baltimore, MD 21202-2040,
        Defendants.

**CIVIL ACTION No.**

**COMPLAINT**

**INTRODUCTION**

Plaintiff Andrew Stewart, by his attorney, hereby brings this Complaint under Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* to recover disability

benefits due to him from the Bert/Bell Pete Rozelle NFL Player Retirement Plan (the "NFL Retirement Plan") and the NFL Player Supplemental Disability Plan (the "Supplemental Disability Plan"). Mr. Stewart played for the Cleveland Browns, Cincinnati Bengals, and San Francisco Forty-Niners from 1989 to 1993. While playing in the NFL, Mr. Stewart suffered multiple severe injuries that have now left him disabled. The Defendants concede that he is totally and permanently disabled, but refuse to pay him the benefits to which he is entitled because he also suffered injuries while playing in the Canadian Football League. The Defendants ignored the evidence in the record that Mr. Stewart is totally and permanently disabled by the NFL related injuries. The Defendants also failed to contact the physician retained by the NFL Retirement Plan to examine Mr. Stewart for any clarification that was needed as to the cause of the disability. As a result, the Defendants have wrongfully denied Mr. Stewart the disability benefits to which he is entitled.

## JURISDICTION AND VENUE

1. This court has jurisdiction under ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1) and 28 U.S.C.§ 1331.

2. Venue in this court is appropriate under ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2).

## PARTIES

3. Plaintiff Andrew Stewart is a former player for the National Football League ("NFL") who resides at 3888 159th Street, Surrey, British Columbia, Canada V3S0Y3.

4. Plaintiff is a vested participant in the NFL Retirement Plan and Supplemental Disability Plan and has made a claim for disability benefits owed to him by the NFL Retirement

2

Plan and Supplemental Disability Plan. Plaintiff is a "participant" in the NFL Retirement Plan and Supplemental Disability Plan within the meaning of Section 3(7) of ERISA, 29 U.S.C. § 1002(7).

5. Defendant Bert/Bell Pete Rozelle NFL Player Retirement Plan is a qualified benefit plan that provides both pension and disability benefits to eligible former NFL Players. The NFL Retirement Plan is administered at 200 St. Paul Place, Suite 2420, Baltimore, MD 21202-2040.

6. The NFL Player Supplemental Disability Plan is a non-qualified benefit plan that provides disability benefits to eligible former NFL players. The Supplemental Disability Plan is administered at 200 St. Paul Place, Suite 2420, Baltimore, MD 21202-2040.

7. The Retirement Board is the named fiduciary and administrator of the NFL Retirement Plan. The Retirement Board is a fiduciary under ERISA, 29 U.S.C. § 1003(21). The Retirement Board's principal place of business is 200 St. Paul Place, Suite 2420, Baltimore, MD 21202-2040.

## FACTS

8. Mr. Stewart was drafted by the Cleveland Browns in 1989 as a defensive end. He played for the Browns during the 1989 season.

9. In 1990, while in training camp with the Cleveland Browns, Mr. Stewart suffered a partial tear of his right Achilles tendon and missed the entire 1990 season.

10. In 1991, while in training camp with the Cincinnati Bengals, Mr. Stewart suffered a torn left ACL and left lateral meniscus. Mr. Stewart had surgery on the damaged left knee and was out for the remainder of 1991 season and the entire 1992 season.

11. That damaged left knee now causes constant pain for Mr. Stewart. He is unable to squat, has difficulty getting out of a chair and with stairs and cannot carry his three year old child up the stairs.

12. In 1993, Mr. Stewart signed with the 49ers. While practicing in Barcelona for a pre-season game, he suffered a severe injury to his right hand that, according to the medical records, required "difficult" surgery to repair. He was out for the remainder of the 1993 season.

13. According to the physician who examined Mr. Stewart on behalf of the NFL Retirement Plan, he "cannot do anything vigorous or precise with his right hand because of pain, weakness and inability to fully actively flex his right index finger. He can't write well."

14. Mr. Stewart subsequently became employed by teams in the Canadian Football League. In 1996, he suffered a right elbow injury and tear of his right triceps. In 2000, he tore his right quadriceps tendon, which was then repaired. After that injury, he ended his football career.

15. Mr. Stewart applied to the NFL Retirement Plan for disability benefits on or about October 27, 2008.

16. The NFL Retirement Plan has different benefit classifications, depending on the source of the disabling condition, the extent of the condition, and its timing.

17. The NFL Retirement Plan required Mr. Stewart to be examined by Dr. Robert Meek, a "neutral physican" selected by the NFL Retirement Plan.

18. All of Mr. Stewart's injuries and surgeries are documented and were reviewed by Dr. Meek. Dr. Meek prepared a written report for the NFL Retirement Plan stating that "genuinely disabled for any reasonable occupation for which he has the training." *See* Exhibit 1.

19.     Mr. Stewart's claim was reviewed the NFL Retirement Plan's Initial Claims Committee (the "Committee"). On or about January 25, 2009, the Committee concluded that Mr. Stewart was "totally and permanently disabled" as defined by the NFL Retirement Plan. The Committee determined, however, that Mr. Stewart's "disabling condition(s) did not arise out of League football activities."

20.     Article 1.19 of the NFL Retirement Plan defines "League" to mean the National Football League.

21.     According to the Committee, Mr. Stewart was eligible for the "inactive" classification of benefits under Article 5.1(d) of the NFL Retirement Plan, which is the classification that pays the smallest benefit to the player.

22.     The Committee provided no explanation for its decision.

23.     Article 5.1(c) of the NFL Retirement Plan provides that a player is eligible for Football Degenerative benefits if his "disability(ies) arises out of League football activities, and results in total and permanent disability before 15 years after the end of the Player's last Credited Season."

24.     Article 6.4(c) of the NFL Retirement Plan defines "arising out of League Football activities" as follows:

> "Arising out of League Football activities" means a disablement arising out of any League pre-season, regular season, or post-season game, or any combination thereof, or out of League football activity supervised by an Employer, including all required or directed activities. "Arising out of League football activities" does not include, without limitation, any disablement resulting from other employment, or athletic activity for recreational purposes, nor does it include a disablement that would not qualify for benefits but for an injury (or injuries) or illness that arises out of other than League football activities.

25. Mr. Stewart qualifies for "Football Degenerative" benefits because his "disability(ies)" arise from his NFL related injuries. Accordingly, Mr. Stewart appealed the Committee's decision to the NFL Retirement Plan's "Retirement Board." *See* Exhibit 2, attached.

26. The Retirement Board is the Plan's named fiduciary and has the authority to decide benefit claims.

27. Dr. Meek states in his report that Mr. Stewart's injuries have left him with "pain and disability in three of his four extremities." The disablement in two of those extremities, his left knee and right hand, are the direct result of his employment with NFL teams.

28. Dr. Meek's report establishes that Mr. Stewart's NFL related disabilities are sufficient *by themselves* to prevent Mr. Stewart from performing gainful employment.

29. Dr. Meek specifically considered whether Mr. Stewart would be employable if he were to have further medical intervention on his left knee and right hand (i.e. the NFL related injuries). Dr. Meek states that Mr. Stewart might be more comfortable if he were to have a successful total knee replacement of his left knee and may "benefit to some degree" from removal of the metal from his right hand and left knee areas. However, Dr. Meek states that he "[did not] think any of these surgeries would make him employable." Dr. Meek also states the potential for further harm if Mr. Stewart had replacement knee surgery at his age.

30. The Retirement Board denied Mr. Stewart's appeal on or about August 18, 2009. The Retirement Board concluded that Mr. Stewart's disabilities did not arise out of League football activities. *See* Exhibit 3, attached.

31. The Retirement Board's decision fails to explain why Dr. Meek's report is insufficient to qualify Mr. Stewart for Football Degenerative benefits.

32. The Retirement Board failed to discuss Dr. Meek's specific findings and explain why those findings did not qualify Mr. Stewart for Football Degenerative benefits.

33. In connection with his appeal, Mr. Stewart, by counsel, contacted Dr. Meek to provide an additional statement on the issue of whether Mr. Stewart's disabilities were related to his employment with the NFL teams, without regard to Mr. Stewart's CFL injuries.

34. Dr. Meek declined to provide additional information because the NFL Retirement Plan prohibits the neutral physicians from communicating with the player or the player's counsel. *See* Exhibit 4, attached.

35. In the appeal letter to the Retirement Board, Mr. Stewart specifically asked the Retirement Board to contact Dr. Meek if the Board could not determine whether Mr. Stewart's NFL injuries were disabling without regard to the CFL injuries.

36. The NFL Retirement Plan mandated form used by Dr. Meek to report his findings does not ask for the physician's opinion on whether a player's disablement "would not qualify for benefits but for an injury (or injuries) or illness that arises out of other than League football activities."

37. The Retirement Board had a duty under ERISA to contact Dr. Meek to obtain additional information on the specific issue of whether Mr. Stewart's disablement "would not qualify for benefits but for an injury (or injuries) or illness that arises out of other than League football activities."

38. The Retirement Board did not contact Dr. Meek.

7

39. Mr. Stewart's "disability(ies) arises out of League football activities," qualifying him for Football Degenerative benefits under Article 5.1(c) of the NFL Retirement Plan.

40. Players who qualify for Football Degenerative benefits under Article 5.1(c) of the NFL Retirement Plan are automatically qualified for additional disability benefits under the Supplemental Disability Plan.

## COUNT I- CLAIM UNDER 29 U.S.C. § 1132(a)(1)(B) FOR FOOTBALL DEGENERATIVE BENEFITS
### Stewart v. NFL Retirement Plan and Supplemental Disability Plan

41. Plaintiff incorporates by reference paragraphs 1 through 40 as though fully set forth herein.

42. Plaintiff is totally and permanently disabled under the terms of the NFL Retirement Plan.

43. Plaintiff is eligible for Football Degenerative benefits under Article 5.1(c) of the NFL Retirement Plan.

44. Plaintiff is eligible for benefits under the Supplemental Disability Plan because he is eligible for Football Degenerative benefits under Article 5.1(c) of the NFL Retirement Plan.

45. The Retirement Board, on behalf of the Plans, abused its discretion by denying Plaintiff's claim and appeal.

46. The Retirement Board, on behalf of the Plans, abused its discretion by refusing to award Plaintiff Football Degenerative Total and Permanent Disability Benefits.

WHERFORE, Plaintiff seeks judgment in his favor, and against the NFL Retirement Plan and the Supplemental Disability Plan, in the form of an Order declaring that he is eligible for Football Degenerative Total and Permanent Disability benefits with an onset date of August 1,

2008, and requiring the Plans to pay him all past, current and future benefits due to him under the Plans, together with attorneys' fees, costs and prejudgment interest and such other relief as the Court deems appropriate.

## COUNT II (In the Alternative)
## BREACH OF FIDUCIARY DUTY UNDER 29 U.S.C. § 1104
### Stewart v. Retirement Board

47. Plaintiff incorporates by reference paragraphs 1 through 46 as though fully set forth herein.

48. The Retirement Board is a fiduciary under ERISA, 29 U.S.C. § 1003(21).

49. The Retirement Board is obligated to discharge its benefit decision-making duties solely and exclusively in the interest of the NFL players who are plan participants.

50. The Retirement Board is obligated to make decisions with the care, skill, prudence and diligence of prudent person under the all the circumstances.

51. The Retirement Board had a fiduciary duty under ERISA, 29 U.S.C. § 1104, to contact Dr. Meek for additional information pertaining to the origin of Mr. Stewart's disability.

52. The Retirement Board breached its fiduciary duty by failing to contact Dr. Meek.

WHERFORE, Plaintiff seeks judgment in his favor, and against Defendant, in the form of an Order requiring the Board to contact Dr. Meek together with attorneys' fees, costs and prejudgment interest and such other relief as the Court deems appropriate.

Respectfully submitted,

Dated: October 5, 2009

Kelly M. Lippincott, Esquire
CARR MALONEY P.C.
1615 L Street, N.W., Suite 500
Washington, D.C. 20036
(202) 310-5500 (Telephone)
(202) 310-5555 (Facsimile)
pjm@carrmaloney.com
kml@carrmaloney.com
*Counsel for Andrew Stewart*