IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

ANDREW STEWART,                    *

    Plaintiff,                    *

    v.                             *     CIVIL NO.: WDQ-09-2612

BERT BELL/PETE ROZELLE NFL
PLAYER RETIREMENT PLAN, et al.,    *

    Defendants.                    *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

MEMORANDUM OPINION

Andrew Stewart sued the Bert Bell/Pete Rozelle NFL Player Retirement Plan ("the Plan"), the Plan's Retirement Board ("the Board"), and the NFL Player Supplemental Disability Plan ("the Supplemental Disability Plan") for violating the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 et seq. For the following reasons, the Defendants' motion to remand to the Board and stay judicial proceedings will be denied.[1]

I. Background[2]

The Plan provides retirement, disability, and related benefits to eligible National Football League ("NFL") players

---

[1] The Court will also deny Stewart's motion to supplement the pretrial statement and order (ECF No. 48) to add an additional witness. As explained infra, the Court will not allow any live witness testimony at the bench trial.

[2] For a more detailed background, see ECF No. 36.

and their beneficiaries. Admin. Rec. 387. Under Article 5 of the Plan, a covered player who becomes "totally and permanently" disabled is eligible to receive "a monthly total and permanent disability ("T&P") benefit." *Id.* at 404. T&P benefits claims are first reviewed by the Plan's Disability Initial Claims Committee ("the Committee"). *Id.* at 418-19. The Committee's decision may be appealed to the Board, which has "full and absolute discretion, authority and power to interpret, control, implement, and manage the Plan." *Id.* at 416-17.

The Plan offers four types of T&P benefits, including Football Degenerative benefits, "if the disability(ies) arises out of [NFL] football activities, and results in total and permanent disability before fifteen years after the end of the Player's last Credited Season," and Inactive benefits, which apply if "(1) the total and permanent disability arises from other than [NFL] football activities while the Player is a Vested Inactive Player, or (2) the disability(ies) arises out of [NFL] football activities and results in total and permanent disability 15 or more years after the end of the Player's last Credited Season. *Id.* at 404-405.

Stewart is a former NFL player for the Cleveland Browns, the Cincinnati Bengals, and the San Francisco 49ers. Pl.'s Mot. Summ. J., Ex. 1 at 3. From 1990 to 1993, he injured his right Achilles tendon, left knee, and right hand. *Id.* at 3-4. In

2

1994, he joined the Canadian Football League ("CFL"). *Id.* at 4. In 1997, he injured his right elbow, and in 2000, he suffered an injury to his distal right quadriceps tendon that ended his career. *Id.* Stewart has been unemployed since 2003, when he resigned from a landscape design job because he was unable to stand for long periods. *Id.*

On October 27, 2008, Stewart applied to the Plan for T&P benefits. Pl.'s Mot. Summ. J., Ex. 2 at 1. On November 5, 2008, the Plan informed Stewart that he was "required to be evaluated by a neutral physician." *Id.* at 9. Because Stewart refused to leave Canada, the Plan arranged for Dr. Robert Meek, a Canadian orthopaedic doctor, to examine him. Admin. Rec. 491.

On January 14, 2009, Dr. Meek examined Stewart and opined that "over a football career in the NFL and the CFL," Stewart had suffered "injuries which . . . left him with pain and disability in three of his four extremities."[3] Pl.'s Mot., Ex. 1 at 5. Dr. Meek concluded that Stewart was "genuinely disabled." *Id.*

On February 3, 2009, the Committee approved Stewart's T&P benefits claim, but awarded him only "Inactive" T&P benefits because it "found that [Stewart's] disabling condition(s) did not arise out of [NFL] football activities." Admin. Rec. 291-

---

[3] Dr. Meek noted pain and disability in Stewart's left knee, right arm, and right calf. Pl.'s Mot., Ex. 1 at 4-5.

293. The Committee provided no explanation of how or why it reached that conclusion. *See id.*

On July 15, 2009, Stewart appealed the Committee's determination to the Board and requested Football Degenerative T&P benefits. *See id.* at 310-314. On August 18, 2009, the Board affirmed the Committee's decision. *See id.* at 317.

On October 6, 2009, Stewart sued the Defendants for denial of ERISA benefits, and breach of fiduciary duty. ECF No. 1. On April 5, 2010, the parties filed a joint stipulation agreeing to remand Stewart's claim for reconsideration by the Board. ECF No. 12. On April 8, 2010, this Court approved the stipulation and ordered the parties to submit a status report within 30 days after the Board issued its remand decision. ECF No. 13.

On April 19, 2010, Paul Scott, a Plan benefits coordinator asked Dr. Bernard R. Bach, an orthopaedic surgeon, to review Stewart's medical records and give his opinion about the claim. Pl.'s Mot. Summ. J. at 6. On April 24, 2010, Dr. Bach opined that the injuries Stewart sustained in the NFL "would not qualify him for total and permanent disability." *Id.* at 2-4.

On April 29, 2010, Dr. Meek submitted a letter clarifying his opinion. Pl.'s Mot. Summ. J., Ex. 8 at 1, 5. His letter stated that Stewart's "left knee and right hand injuries would have left him disabled, even if he hadn't played in the CFL." *Id.* at 5.

4

In May 2010, Scott requested that Dr. Bach and Dr. Meek review each other's opinions and provide their "complete and final opinion[s] on the matter." Pl.'s Mot. Summ. J., Ex. 9 at 1-2. On May 27, 2010, Dr. Bach responded that "Stewart is not totally and permanently disabled." Id. at 3. On June 7, 2010, Dr. Meek responded that Stewart's "left knee and right hand injuries would have left him disabled, even if he hadn't played in the CFL." Id. at 4.

On August 2, 2010, Scott sought further clarification from Dr. Bach. Pl.'s Mot. Summ. J., Ex. 10 at 1. On August 4, 2010, Dr. Bach responded that Stewart was "not totally and permanently disabled due to NFL football activities," and review of the x-rays would "not affect [his] opinions." Id. at 2.

On August 18, 2010, the Board reconsidered Stewart's claim, and affirmed its decision that he was ineligible for Football Degenerative T&P benefits. Pl.'s Mot. Summ. J., Ex. 11. At the meeting, the Board noted that the opinions of Dr. Meek and Dr. Bach conflicted. Id. at 1-3. The Plan's Medical Director,[4] Dr. Stephen Haas, was at the meeting, and the Board "asked for

---

[4] The Plan provides for appointment of a Medical Director who will give medical advice with respect to the Plan's neutral physicians and medical examination procedures. Admin. Rec. 430. The Medical Director "will provide advice on medical issues relating to particular disability benefit claims as requested by members of the [Board] or a member of the [Committee]." Id. "The Medical Director will not examine Players, and will not decide or recommend whether a particular Player qualifies for a disability benefit." Id.

his views on the matter." *Id.* at 3. Dr. Haas "reviewed the conflicting letters and medical reports," and stated that "the matter is 'not even close'"; "Stewart's injuries suffered during his NFL career did not produce total and permanent disability." *Id.* at 3.

On September 21, 2010, Stewart submitted a status report informing the Court that the Plan had issued its final denial of his claim, and he wished to proceed with discovery. ECF No. 14. On February 16, 2011, Stewart moved for summary judgment, arguing that the Board had improperly relied on Dr. Haas's opinion and discredited Dr. Meek's opinion. Pl.'s Mot. Summ. J. at 10-21. On March 9, 2011, the Defendants filed their motion for summary judgment, arguing that the Board's decision was reasonable. ECF No. 32 at 11-14.

On July 19, 2011, the Court denied the parties' cross motions for summary judgment on Stewart's denial of benefits claim. ECF No. 37.[5] The Court found that a reasonable factfinder could conclude that the Board's decision that Stewart did not qualify for Football Degenerative benefits was not the product of a "deliberate, principled reasoning process." ECF

---

[5] The Court granted the Defendants' motion as to Stewart's claim for breach of fiduciary duty because, when a beneficiary seeks benefits that should have been distributed under a plan, the appropriate remedy is a claim for denial of benefits under 29 U.S.C. § 1132(a)(1)(B), not a fiduciary duty claim. ECF No. 37 at 24-25.

No. 36 at 23. The Defendants were not entitled to judgment as a matter of law, because Stewart had produced "evidence showing genuine disputes about whether the Board (1) arbitrarily discredited Dr. Meek, and (2) rendered its decision based on an impermissible benefits recommendation from Dr. Haas." *Id.* Stewart was not entitled to judgment as a matter of law, because Dr. Meek's equivocal opinion did not overwhelmingly establish that Stewart's disabilities arose out of his NFL-related activities. *Id.* at 25.

On August 19, 2011, the Defendants moved to remand the case to the Board and stay judicial proceedings. ECF No. 39. On September 6, 2011, Stewart opposed that motion. ECF No. 41. On September 23, 2011, the Defendants filed a reply. ECF No. 43.

II. Analysis

The Defendants contend that the Court found that the existing administrative record lacks sufficient evidence to establish whether Stewart is entitled to benefits and, thus, the Court must "remand Stewart's claim to the Board for further consideration." ECF No. 39-1 at 2, 4. Stewart counters that the motion to remand is untimely, and remand would not resolve whether the Board abused its discretion in denying his claim for benefits. ECF No. 41 at 2, 5.

A. Timeliness of Motion to Remand

Stewart construes the Defendants' motion as a motion for reconsideration of the Court's order granting partial summary judgment and "decision to proceed with trial." ECF No. 41 at 2. Thus, he argues that, under Local Rule 105.10,[6] the Defendants had until August 8, 2011, to file the motion. ECF No. 41 at 1. The Defendants counter that their motion is not one for reconsideration, because it merely asks the Court to approve "the next steps to be taken *procedurally*," "not to reconsider the substantive merits of the case or otherwise . . . revisit its summary judgment ruling." ECF No. 43 at 3 (emphasis in original).

The Defendants' motion is timely. The Court agrees that the Defendants have not asked this Court to reconsider its order, only the subsequent procedure. Accordingly, Local Rule 105.10 does not apply.

B. Remand

The Defendants contend that a bench trial is improper because the Court must consider only the administrative record, not "after-the-fact testimony." ECF No. 43 at 5 (internal citation and quotation marks omitted). According to the

---

[6] Local Rule 105.10 provides that any motion to reconsider a Court order must be filed no later than 14 days after entry of the order, except as otherwise provided in Fed. R. Civ. P. 50, 52, 59, or 60.

8

Defendants, the Court concluded that "the existing administrative record did not contain sufficient evidence entitling either party to summary judgment." ECF No. 39-1 at 4. Thus, they propose remand to allow Stewart to be examined by "a neutral physician." *Id.* at 3.

Stewart counters that remand "cannot address either of the issues [that] this Court has identified as being in dispute, *i.e.*, whether the Board arbitrarily discredited Dr. Meek or impermissibly relied on Dr. Haas as a tie-breaker." ECF No. 41 at 3. Thus, a bench trial is the proper next step. The Court agrees.

Defendants correctly note that the Court's review of a plan administrator's denial of benefits is limited. The Court may consider only "the existing administrative record," not "any testimony or other additional evidence obtained outside the administrative record."[7]  "[D]iscovery and introduction of

---

[7] *Williams v. Metro. Life Ins. Co.*, 609 F.3d 622, 631 (4th Cir. 2010). *See also Sheppard & Enoch Pratt Hosp., Inc. v. Travelers Ins. Co.*, 32 F.3d 120, 125 (4th Cir. 1994 ) ("an assessment of reasonableness of the administrator's decision must be based on the facts known to it at the time"); *Berry v. Ciba-Geig Corp.*, 761 F.2d 1003, 1007 (4th Cir. 1985) (district court erred in admitting doctor's "after-the-fact testimony" explaining his letter to the plan administrator); *Harvey v. Astra Merck Inc. Long Term Disability Plan*, 348 F. Supp. 2d 536, 542 (M.D.N.C. 2004) (considering "only the evidence that was included in Plaintiff's claim file prior to" the benefits denial, because "the district court is precluded from receiving evidence to resolve disputed material facts" on motions for summary judgment).

extrinsic evidence pertaining to the mental processes of the plan's administrator are generally, if not uniformly, disallowed."[8] These strictures do not bar the Court from conducting a bench trial after denying summary judgment to the parties.

The Court's role on a motion for summary judgment is limited. "[A]t the summary judgment stage the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."[9] "A judge does not sit as a trier of fact when deciding a motion for summary judgment even if the case is scheduled to be heard without a jury."[10] "[E]ven if the facts are undisputed, summary judgment may not be granted where there is disagreement

---

[8] *Donnell v. Metro. Life Ins. Co.*, 164 F. App'x 288, 297 (4th Cir. 2006) (internal citation and quotation marks omitted).

[9] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). *See also In re French*, 499 F.3d 345, 359 (4th Cir. 2007) (trial court could weigh the evidence and make credibility determinations "following a bench trial," but "it was inappropriate to make such findings of fact and resolve such conflicts in the evidence on summary judgment").

[10] *Med. Inst. of Minn. v. Nat'l Ass'n of Trade & Technical Schs.*, 817 F.2d 1310, 1315 (8th Cir. 1987). *See also Johnson v. Maryland*, 991 F.2d 789 (table), 1993 WL 120480, at *2 (4th Cir. 1993) ("Whether a case is set for jury trial or . . . bench trial, . . .at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter") (internal citation and quotation marks omitted).

over inferences that can be reasonably drawn from those facts."[11]

At a bench trial, "the district judge will be asking a different question." *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1095 (9th Cir. 1999) (en banc). Rather than deciding whether a genuine issue of material fact exists, the Court makes findings of fact by evaluating the persuasiveness of conflicting evidence and "decid[ing] which is more likely true."[12] Moreover, during the summary judgment phase, "each motion [is] considered individually, and the facts relevant to each [are] viewed in the light most favorable to the non-movant." *Mellen v. Bunting*, 327 F.3d 355, 363 (4th Cir. 2003). This "is a very different enterprise from the fact-finding engaged in at a bench trial."[13]

At the summary judgment stage, this Court identified material factual disputes about whether the Board (1) had arbitrarily discredited Dr. Meek, and (2) rendered its decision based on an impermissible benefits recommendation from Dr. Haas.

---

[11] *In re Unisys Sav. Plan Litig.*, 74 F.3d 420, 433 (3d Cir. 1996). *See also United States v. Bales*, 813 F.2d 1289, 1293 (4th Cir. 1987) (at a bench trial, the judge "may select among conflicting inferences to be drawn from the testimony").

[12] *Kearney*, 175 F.3d at 1095. *See also Bales*, 813 F.3d at 1293 (at a bench trial, "the judge weighs the evidence, determines the credibility of the witnesses, and finds the facts").

[13] *In re Pharm. Indus. Average Wholesale Price Litig.*, 582 F.3d 231, 236 (1st Cir. 2009) (internal citation omitted). *See also* Fed. R. Civ. P. 52(a) ("In an action tried on the facts without a jury . . . , the court must find the facts specially and state its conclusions of law separately.").

ECF No. 36 at 23. Because the Court was not sitting as the trier of fact, *see Med. Inst. of Minn.*, 817 F.2d at 1315, it was unable to weigh the evidence, make credibility determinations, or resolve conflicts in the evidence, *see In re French*, 499 F.3d at 359. Such fact-finding is appropriate only at trial. *See id.*

That the Court may consider only the administrative record in making its findings, *see Williams*, 609 F.3d at 631, does not make a bench trial improper. Courts in the Fourth Circuit routinely resolve benefits denial claims through bench trials.[14] Because a district court "is not permitted to look beyond the evidence presented to the administrator," however, "it seems appropriate for a district court to conduct a bench trial on the

---

[14] *See, e.g., Watson v. Unum Life Ins. Co.*, 126 F. App'x 604, 605 (4th Cir. 2005) (per curiam) (reviewing district court's conclusion, following a bench trial, that the plan administrator did not abuse its discretion in denying benefits); *Myers v. Hercules, Inc.*, 253 F.3d 761, 765 (4th Cir. 2001) (same). *Accord Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 973 (9th Cir. 2006); *Hammack v. Baroid Corp.*, 142 F.3d 266, 269 (5th Cir. 1998); *Lavino v. Metro. Life Ins. Co.*, 779 F. Supp. 2d 1095, 1099, 1114 (C.D. Cal. 2011) (concluding, after bench trial, that plan administrator abused its discretion in denying benefits); *Brown v. PFL Life Ins. Co.*, 312 F. Supp. 2d 863, 864 (N.D. Miss. 2004) (concluding, after bench trial, that benefits denial was not an abuse of discretion); *Kelly v. Ret. Pension Plan for Certain Home Office, Managerial & Other Emps. of Provident Mutual*, 209 F. Supp. 2d 462, 466, 471 (E.D. Pa. 2002) (same); *Celi v. Trs. of Pipefitters Local537 Pension Plan*, 975 F. Supp. 23, 24, 28 (D. Mass. 1997) (same).

papers."[15]  "[T]rial on the record, even if it consists of no more than the trial judge rereading what he has already read, and making findings of fact and conclusions of law instead of a summary judgment decision, may have real significance." *Kearney*, 175 F.3d at 1095.  The process of fact-finding under Rule 52 may lead a judge "to a different conclusion" than he reached at the summary judgment phase.  *Id.*[16]

---

[15] *Lamb v. Nextel Commc'ns of Mid-Atl., Inc.*, Case No. 4:09-cv-149, 2010 WL 4068520, at *8 (E.D. Va. Aug. 19, 2010) (magistrate's report and recommendation) (emphasis, internal citation, and quotation marks omitted), *adopted by* 2010 WL 4068483 (E.D. Va. Oct. 13, 2010), *aff'd by* 429 F. App'x 337 (4th Cir. 2011).  *Accord Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 618 (6th Cir. 1998) ("a district court should not adjudicate an ERISA action as if it were conducting a standard bench trial" because "[s]uch a proceeding would inevitably lead to the introduction of testimonial and/or other evidence that the administrator had no opportunity to consider"; court should review the administrator's decision *de novo*, "based on the record before the administrator"); *Sweatman v. Commercial Union Ins. Co.*, 39 F.3d 594, 598 (5th Cir. 1994) (affirming judgment of the district court, which had a "bench trial submitted on pleadings, depositions, and the administrative record" and found that the plan administrator had not abused its discretion in denying benefits).

[16] Because courts in ERISA cases so often consider the same papers at bench trials as on summary judgment motions, the First Circuit has held that, "in an ERISA case where review is based only on the administrative record," "summary judgment is simply a vehicle for deciding the issue" and "the non-moving party is not entitled to the usual inferences in its favor. *Orndorf v. Paul Revere Life Ins., Co.*, 404 F.3d 510, 517 (1st Cir. 2005). Although it has acknowledged in *dicta* some reservations about "importing the summary judgment standard whole-cloth into the ERISA context," *see Phelps v. C.T. Enters., Inc.*, 394 F.3d 213, 218 (4th Cir. 2005), the Fourth Circuit has not adopted such a streamlined approach.  Thus, the Court's functions at the summary judgment stage and at a bench trial are distinct.

Sometimes remand -- not trial -- is the proper next step after the summary judgment stage. But remand "should be used sparingly." *Berry*, 761 F.2d at 1008. Remand is appropriate when a court determines that the administrator "lacked adequate evidence"[17] or did not consider relevant and available information.[18] That is not the case here. On summary judgment, the Court did not find that the administrative record was lacking or the Board had ignored information; the Court determined that reasonable triers of fact could disagree about whether the Board had arbitrarily discredited Dr. Meek or improperly relied on Dr. Haas's opinion in denying the benefits.[19] ECF No. 36 at 22-23.

---

[17] *Berry v. Ciba-Geig Corp.*, 761 F.2d at 1007. *See also Bernstein v. Capitalcare, Inc.*, 70 F.3d 783, 789 (4th Cir. 1995) (if evidence before the plan administrator is inadequate, "the district court should remand the case to the administrator to receive additional evidence and to make a new determination").

[18] *Elliott v. Sara Lee Corp.*, 190 F.3d 601, 609 (4th Cir. 1999) (internal citations and quotation marks omitted).

[19] Thus, this case is distinguishable from the remand cases cited by the Defendants. *See, e.g., Zhou v. Metro. Life Ins. Co.*, Case No. 09-1516-AW, 2011 WL 3880460, at *16 (D. Md. Sept. 2, 2011) (remanding because the plan administrator failed to consider certain doctors' opinions); *Scott v. PNC Bank Corp. & Affiliates Long Term Disability Plan*, Case No. WDQ-09-3239, 2011 WL 693286, at *6-*8 (D. Md. Feb. 15, 2011) (remanding after concluding that the administrator had based the benefits decision on an "unreliable" doctor's report); *Thomas v. Alcoa, Inc.*, Case No. RDB-07-1670, 2008 WL 4164156, at *15 (D. Md. Sept. 5, 2008) (remanding after finding that the plan administrator had abused its discretion in denying the benefits).

The Court will deny the Defendants' motion to remand the case to the Board. At trial, the Court will consider only the administrative record and arguments about what that record proves about the Board's treatment of Dr. Meek's opinion and its reliance on Dr. Haas's opinion in denying benefits. See *Williams*, 609 F.3d at 631. This trial will comport with "ERISA's goal of providing an inexpensive and expeditious method of resolving benefits disputes." *Wilkins*, 150 F.2d at 618.

III. Conclusion

For the reasons stated above, the Defendants' motion to remand to the Board and stay judicial proceedings will be denied.

\_\_1/12/12_____  \_\_\_/s/_____
Date                              William D. Quarles, Jr.
                                  United States District Judge